In the Matter of CALLANAN MARINE CORPORATION, Petitioner, v STATE TAX COMMISSION, Respondent.

Third Department, January 26, 1984

**APPEARANCES OF COUNSEL**

*Cole & Dietz* (*Charles A. Simmons* and *James J. Terry* of counsel), and *Hayes & Lapetina* (*Harry R. Hayes* of counsel), for petitioner.

*Robert Abrams, Attorney-General* (*Peter G. Crary* and *William J. Kogan* of counsel), for respondent.

MAHONEY, P. J.

Petitioner, a common carrier chartered by the Interstate Commerce Commission, is in the business of transporting crushed stone, brick and sand for its parent corporation, Callanan Industries, Inc., which mines and sells crushed stone. Petitioner's activities which are at issue in the instant proceeding involve the transportation of crushed stone in scows towed by a tugboat from the quarries of Callanan Industries near Kingston, Ulster County, down the Hudson River to the New York City metropolitan area where the scow tow is disassembled and the scows are dispatched to their ultimate individual destinations in the States of New York, New Jersey and Connecticut. The Sales Tax Bureau of the Department of Taxation and Finance assessed petitioner for sales tax due plus penalties and interest for the purchase of a tugboat and three scows, rentals paid for the use of scows, and the purchase of fuel, supplies and maintenance for its tugboat and scows. Such assessment was limited to expenses incurred for those scows which delivered crushed stone to locations within New York State. After modifying the amounts due, respondent sustained the deficiencies. Petitioner commenced a CPLR article 78 proceeding to review the determination, which proceeding has been transferred to this court for resolution.

Petitioner's primary argument is that the expenses which are the subject of the assessment are exempt from sales and use tax because they were incurred in connection with commercial vessels primarily engaged in interstate or foreign commerce (Tax Law, § 1115, subd [a], par [8]). The record indicates that petitioner loaded the scows near its quarries and formed scow tows consisting of 6 to 10 scows towed by a tugboat. The scow tows proceeded down the Hudson River for a journey of about 90 miles. During the last 20 or so miles of the trip, the Hudson River is bounded on the west by the State of New Jersey and on the east by New York. During that portion of the journey, the scow tows proceeded on the New Jersey side of the river for navigational reasons. Prior to July 24, 1972, the scow tows were docked at a pier in New York City where they were

disassembled and the individual scows delivered to their ultimate destinations. Beginning July 24, 1972, when petitioner hired an independent contractor to tow the scows, the scow tows were docked at a pier in Hoboken, New Jersey, where they were disassembled and sent to their ultimate destinations. Respondent held that, with respect to the scows which were directed to destinations in New York State, the fact that the scows temporarily passed through New Jersey waters and, after 1972, temporarily docked at a pier in New Jersey did not make them vessels primarily engaged in interstate commerce.

■ Initially, we note that there is no claim that the sales tax, as applied, is improper as violative of the commerce clause of the United States Constitution (US Const, art I, § 8). The issue here is simply whether the statutory exemption is applicable. Respondent's resolution of this issue will not be set aside unless it is clearly erroneous (*Matter of Koner v Procaccino,* 39 NY2d 258, 264) or unreasonable and irrational (see *Matter of Slattery Assoc. v Tully,* 79 AD2d 761, affd 54 NY2d 711). Respondent has, by regulation, defined the phrase "engaged in interstate or foreign commerce" as "the transportation of persons or property for compensation between States or counties" (20 NYCRR 528.9 [a] [5]). Petitioner does not quarrel with this definition, but argues that the scows were engaged in interstate commerce because they crossed State lines. We disagree. The scows which are the subject of this assessment had a New York origin and a New York destination. The passage through New Jersey waters was merely incidental to what was clearly an intrastate journey. The same is true of the temporary docking in New Jersey. The scows were not unloaded at such time, but were merely disassembled and dispatched to predetermined destinations. To hold as petitioner urges would allow carriers to avoid sales and use taxes by the simple expedient of choosing routes for intrastate journeys with an incidental crossing of State lines. In our view, respondent properly concluded that the exemption provided by section 1115 (subd [a], par [8]) of the Tax Law is not applicable to this case.

■ Petitioner's other argument is that respondent engaged in an improper ex parte communication with the

Tax Appeals Bureau. Following the hearing before the Tax Commission, the hearing officer issued a proposed decision denying the petition. The Director of the Tax Appeals Bureau informed the Tax Commission that, while he agreed with the hearing officer's conclusion, he disagreed with the rationale. Respondent ultimately issued its decision adopting the rationale proposed by the Director of the Tax Appeals Bureau. Such communication is authorized by respondent's regulations (20 NYCRR 601.1 [h] [2]) and is not improper since the Tax Appeals Bureau reports directly to the Tax Commission and is not involved in the administration or collection of taxes (20 NYCRR 601.1 [h]). Therefore, petitioner's contention is without merit.

The determination should be confirmed, and the petition dismissed, without costs.

MAIN, MIKOLL, YESAWICH, JR., and WEISS, JJ., concur.

Determination confirmed, and petition dismissed, without costs.