629 A.2d 179

**MACK TRUCKS, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent (Two Cases).**

Commonwealth Court of Pennsylvania.

Argued May 13, 1993.

Decided June 11, 1993.

Publication Ordered July 30, 1993.

16

Robert L. Weldon, for petitioner.

Bart J. DeLuca, Jr., for respondent.

Before COLINS and PELLEGRINI, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

Before this court are exceptions filed by Mack Trucks, Inc. (Mack) pursuant to Pa.R.A.P. 1571(i) to the decision of this court filed January 29, 1993, affirming the orders of the Board of Finance and Revenue (Board) reviewing assessments of sales and use taxes.[1] In that case, Mack sought review of the Board orders reassessing its use tax for the period October 1, 1984 through December 31, 1987, on purchases of equipment and supplies directly used in operations at its Middletown plant and refusing to refund the sales tax on electricity used at its Middletown plant between October 1984 and September 1988.[2]

Mack's Middletown plant produces diesel engines by acquiring used engine blocks, breaking them down, salvaging some of the parts, and combining them with new parts to make a useable engine. The "new" parts include both parts purchased separately and defective parts acquired from another

---

1. The appeal to this court from the orders of the Board was conducted de novo. In the decision filed January 29, 1993, we adopted the parties' stipulations of fact as our own findings.

   On February 24, 1993, Mack filed exceptions to the decision pursuant to Pa.R.A.P. 1571(i), which provides: "Any party may file exceptions to an initial determination by [this court] under this rule within 30 days after the entry of the order to which exception is taken. Such timely exceptions shall have the effect ... of an order expressly granting reconsideration of the determination previously entered by [this court]."

2. Under Section 201(k) and 201(o) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, as amended, 72 P.S. § 7201(k) and (o), sales and use tax is not imposed on the machinery and supplies used directly in the operations of the manufacture of personal property. "Manufacture" is defined as "[t]he performance of ... operations, engaged in as a business, which place any tangible personal property in a form, composition or character different from that in which it is acquired for sale or use by the manufacturer." Section 201(c) of the Code, 72 P.S. § 7201(c).

Mack plant (Hagerstown, Maryland) which are unusable until they are repaired at the Middletown plant.

Mack contended that the Board erred in not applying an amendment to Section 201(c), found in the Act of 1991, August 4, P.L. 97, No. 22 (Act 22), which includes in the definition of manufacture the remanufacture of motor vehicle parts from used parts acquired in bulk under certain circumstances. Current Section 201(c)(6) of the Code, 72 P.S. § 7201(c)(6). Mack argued that Section 41 of Act 22 [3] stating that the amendment was a "clarification" of the existing manufacture exclusion required an application of the remanufacture amendment to the time period in question which ended approximately three years before the enactment of Act 22. Mack also contended that even if Act 22 did not require that the remanufacture exclusion apply, that its operations at the Middletown plant were "manufacturing" and excluded by the former Section 201(c) of the Code.

This court in its previous panel decision held that the remanufacture exclusion expressed in Act 22 did not apply to the time period in question because it was not retroactive and the "clarification" language contained in Section 41 of Act 22 could not determine the interpretation of the statute. We also held that Mack's operations were not manufacturing under the former Section 201(c), and it was not entitled to the sales and use tax exclusion because the engines it produces have the same form, composition and character as the used engines Mack begins with.[4]

3. Section 41 of Act 22 (found in the Historical and Statutory Notes following the current Section 201 of the Code, 72 P.S. § 7201) provides:

It is the intent of the General Assembly that the amendment of § 201(c)(6) [this section] is to clarify existing law and shall not be construed to indicate a presumption that it is the intent of the General Assembly to change the existing law.

4. Our scope of review in tax appeals is "limited to the construction, interpretation and application of a State tax statute to a given set of facts." *Escofil v. Commonwealth*, 46 Pa.Commonwealth Ct. 475, 477, 406 A.2d 850, 852 (1979), *affirmed per curiam*, 499 Pa. 207, 452 A.2d 1012 (1982).

Several of Mack's exceptions (Petitioner's Exceptions ## 11–16) object generally to the conclusions of law concerning the inapplicability of Act 22 to the Middletown operations for the period in question. As we stated in our original opinion:

> Mack's argument implies that Section 41 makes the remanufacture exclusion apply retroactively. However, statutes are not retroactive unless clearly and manifestly intended by the General Assembly. 1 Pa.C.S. § 1926. Bureau of Employment Security v. Pennsylvania Engineering Corporation, 54 Pa.Commonwealth Ct. 376, 379–80, 421 A.2d 521, 523 [1980] (1988). Although Act 22 expressly provided that some sections of the Act would apply retroactively, the remanufacturing exclusion was not listed among those sections. Sections 43 and 45 of Act 22. If the General Assembly wanted the remanufacturing exclusion to apply retroactively, it certainly knew how to do it and did not.

(slip op. at 5–6). Because the General Assembly did not clearly and manifestly intend such an application, the remanufacturing provision of Act 22 does not apply retroactively.

Furthermore, even though Section 41 of Act 22 states that the remanufacturing provision was "to clarify existing law", such a later amendment cannot be determinative on the application of the manufacturing exclusion prior to the amendment. Such an interpretation of a statute is beyond the powers of the General Assembly. *Smithkline Beckman Corp. v. Commonwealth*, 85 Pa.Commonwealth Ct. 437, 455 n. 1, 482 A.2d 1344, 1352 n. 1 (1984), *affirmed per curiam*, 508 Pa. 359, 498 A.2d 374 (1985) (see slip op. at 6–7). Accordingly, Mack's exceptions as to those conclusions are dismissed.

Mack also excepts to the characterization by the panel opinion of the defective parts used in the engines. (Petitioner's Exception # 4). While we inadvertently stated that the parts were from unusable engines, those parts were never combined in an engine but were determined to be defective and shipped to their Middletown plant before they were assembled into a new engine. Although Mack's characterization of the defective parts as parts rather than engines and as

"new" because they have never been included in an operating engine was stipulated as fact, those facts do not change the conclusion that the manufacturing exclusion of Section 201(c) does not apply to the Middletown operations for the period in question. (generally, Petitioner's Exceptions ## 1–3, 5–10).

Just as in *Beasley Industries, Inc. v. Commonwealth of Pennsylvania*, 116 Pa.Commonwealth Ct. 505, 542 A.2d 210 (1988), *affirmed per curiam*, 521 Pa. 533, 557 A.2d 1062 (1989), Mack begins with worn out engines which must be broken down and refurbished before combining them with other parts to produce another engine. Also, in both situations, more than half of the parts in the produced engine are new parts. *Id.* at 509, 542 A.2d at 211. But the number of new parts is inconsequential because Mack "starts with an unusable engine of a specified size and shape and ends with a useable engine of the same specified size and shape". *Id.* at 511, 542 A.2d at 213. Mack also takes defective new parts which are unusable and repairs them so that they end with useable new parts of the same specified size and shape.[5] The purpose of the Middletown operations is to make use of used but salvageable engines and defective but repairable engine parts. As in *Beasley,* the process results in no change in form, composition or character in the engines which is required under Section 201(c) of the Code for the manufacturing exclusion. *See also Beckwith Machinery Co. v. Commonwealth of Pennsylvania*, 35 Pa.Commonwealth Ct. 138, 385 A.2d 605 (1978), *affirmed per curiam*, 485 Pa. 337, 402 A.2d 661 (1979). Therefore, the exceptions relating to the applicability of the manufacturing exclusion are also dismissed.

Mack also objects to our original order because it provided for judgment as set forth by the Board. Mack correctly

**5.** Mack argues in its brief on exceptions that there is a predominance test based on the number of new parts in the produced engine. There is no statutory basis for such a test when determining whether a taxpayer's operation is manufacturing. Section 201(c) of the Code refers only to whether there is a change in form, composition or character. Moreover, the taxpayer in *Beasley* produced engines with "predominantly" new parts but this court did not find that fact determinative under the Code.

contends that the order is erroneous because in paragraph 34 of the Stipulations of Fact, the parties agreed that even if we found that Mack was not entitled to the manufacturing exclusion of Section 201(c) of the Code, the use taxes previously reassessed by the Board would be further reduced by $21,-871.42. Accordingly, the order in this decision will assign use tax liability in the case docketed at No. 207 F & R 1989 of $362,095.50, plus appropriate interest. No relief is granted as to the sales tax liability in the case docketed at No. 237 F & R 1989.

## ORDER

AND NOW, this 11th day of June, 1993, the exceptions of Mack Trucks, Inc. are dismissed except for Petitioner's Exception # 17. In accordance with the decision of this court in *Mack Trucks, Inc. v. Commonwealth* (No. 237 F.R.1989, filed January 29, 1993), the order of the Board of Finance and Revenue dated August 30, 1989, No. RST–12801, is affirmed in its entirety. The order of the Board of Finance and Revenue, dated July 26, 1989, No. RST–12463, relating to 207 F.R.1989, is amended so that the final use tax liability of Mack Trucks, Inc. is limited to $362,095.50, plus appropriate interest.